Good morning, Your Honors, and may it please the Court. My name is Emily Koza. I'm an Assistant Appellate Defender with the Office of the State Appellate Defender, and I'm representing Lauren Jasper, the Defendant Appellate in this case. This is a consolidated appeal from two Mercer County cases. In Case 13-CF5, Mr. Jasper was convicted after a bench trial of two counts of criminal sexual assault and one count of aggravated criminal sexual abuse. In Case 13-CF64, he was convicted of two counts of aggravated criminal sexual abuse. Following a consolidated sentencing hearing, Mr. Jasper was sentenced to 28 years for one count of criminal sexual assault in Case 13-CF5, and a consecutive six years for one count of aggravated criminal sexual abuse in Case 13-CF64. And we've raised four arguments in this appeal in our briefs. The first is that the evidence presented at trial in Case 13-CF5 negated the State's proposition that Mr. Jasper was in a position of trust, authority, or supervision in relation to the victim, CW. The second is that Mr. Jasper should not be serving a past act sentence based on his prior out-of-state conviction because the State failed to prove his prior conviction was substantially equivalent to or more serious than the offense of criminal sexual assault. Now, the third and fourth arguments relate to the combined sentencing hearing and the judge's oral pronouncement of Mr. Jasper's sentences at that proceeding. I'm going to be focusing my argument today on the enhancement issue, but if your honors have any questions regarding the other issues, of course, I'd be happy to answer them. In regards to the enhancement issue, in Case 13-CF5, Counts 1 and 2 of the information charged Mr. Jasper with two counts of criminal sexual assault, alleging that he held a position of trust, authority, or supervision in relation to the victim. The two charges were identical, except for the fact that Count 1 was charged as a Class X offense under 720 ILCS 5-12-13-B4. This was based on Mr. Jasper's 1987 conviction in Iowa for second-degree criminal sexual abuse. Section 12-13-B4 allowed the State to increase sexual assault from a Class I to a Class X felony if Mr. Jasper had a prior conviction under, quote, any similar statute of this State or any other State for an offense involving criminal sexual assault that is substantially equivalent to or more serious than the offense he was charged with in that information. Enhancing criminal sexual assault from a Class I to a Class X felony based on an out-of-State offense required proof that Mr. Jasper was previously convicted of either criminal sexual assault, an offense substantially equivalent to criminal sexual assault, or an offense that was more serious than criminal sexual assault. Such proof was lacking in this case. It's undisputed that the defendant was convicted of second-degree criminal sexual abuse in Iowa in 1987. But the heart of this issue is whether it was possible to determine, without establishing the underlying conduct, that the defendant was convicted of an offense in Iowa that is substantially equivalent to or more serious than criminal sexual assault in Illinois. We submit that it was not. So the case law in this area is pretty clear. For an offense to be considered substantially equivalent to the offense of criminal sexual assault, the prior offense must have involved an act of penetration. Now, in People v. Donahoe, the Illinois Supreme Court upheld this Court's ruling vacating defendant's Class X sentence under the same sentencing enhancement provision at issue in this case. So, in Donahoe, this Court found that defendant's prior conviction of indecent liberties with a child was not a substantially equivalent or more serious offense than criminal sexual assault because it did not involve an act of penetration. Here, defendant's Iowa offense was determined to be substantially equivalent to criminal sexual assault, but there is no evidence that the Iowa offense involved an act of penetration. At the sentencing hearing, the State offered a certified copy of defendant's Iowa conviction into evidence, but this document contains no information about the underlying factual basis for the conviction. Further, the Iowa statute for second-degree criminal sexual abuse covers a broader course of conduct than the criminal sexual assault statute in Illinois. In Iowa, one can be convicted of second-degree criminal sexual abuse for the mere touching of a sexual organ, regardless of intrusion. That's not the case in Illinois. Penetration is an element of criminal sexual assault in Illinois. Therefore, in order for Mr. Jasper's conviction to have been subject to the sentence enhancement based on his Iowa conviction, the fact finder would have had to determine, beyond a reasonable doubt, that the Iowa offense included an act of penetration. That did not happen here. Thus, the trial court improperly imposed the Class X felony sentence on defendant's conviction of criminal sexual assault. And if your honors do not have any questions for me, we ask this honorable court to vacate Mr. Jasper's Class X conviction on count one and remand for sentencing on the unenhanced offense on count two. I'd like to ask you a question. Sure. What elements are missing in the supervision of the child? Our position is that any presumptive role of supervision was rebutted by the testimony at trial. For example, the victim CW testified that she didn't really trust the defendant. There was also testimony that he didn't really direct her activities when she was in the house. He didn't really supervise her. He was just kind of there. And so our argument then is that she didn't trust him. She didn't feel that he supervised her, that he really had any authority over her. So that is what we feel like is lacking. Does that answer your question? Didn't she testify that if there was an emergency, she would go to him? Or if she needed something, couldn't find it, she would go to him? She did. She did testify to that. On the authority or supervision, there's no requirement that it be unlimited authority or supervision, right? As far as I understand, yes. But the difference in this case is that there was no real subjective view on her part that he was somebody that she could trust or that she found to be an authority other than the fact that he was an adult. So similarly, if the 13-year-old was in an emergency situation, they would look to the first adult. They would look to an adult to perhaps handle the situation. But that's reason that it's different in this case. So if somebody's in a position of supervision, you don't have to trust them, do you, as long as they hold that position? No. Ability to supervise? I would agree with that. But the evidence in this case actually, I believe the victim testified that she didn't feel like he was actually in charge of her, that he supervised her activities. He was somebody who just happened to be there. And it was his house, and he was the adult. It was, I believe, a joint residence with him and his wife. He didn't really, he didn't have the authority to tell her to go home. He didn't have the authority to ask her to come over to the house. His wife was the one that dealt with her primarily. We're looking at the individual factual situation as a case-by-case executive. Yes. As opposed to describing the statute somehow, but there's no actual supervision. Correct. And, correct. As opposed to kind of an ideal world, it's just a category of their points. Yes. Correct. Are there any more questions? Thank you. Thank you. And Ms. Devlin? Afternoon, Your Honors, or morning, I guess, counsel. I'd first like to address the reasonable doubt issue. It is true that, as charged, the state had to prove beyond a reasonable doubt not only the digital penetration that occurred here, but also that the defendant held a position of trust authority over this little girl. The victim in this case was 13 years old. She was a babysitter for the defendant's stepchildren, the youngest of which was a girl 9 years old. Now, whether or not Mom actually paid the babysitter, that's kind of irrelevant. This man was 39 years old. It was his house. These were his stepchildren. And to think for one minute that this man wasn't in a position of authority over this 13-year-old babysitter is preposterous. If she did anything wrong, he could have told her to leave the house. He could have taken her home. He was the one really in charge of these two children. She was there to babysit them. In case he got called to work, he was kind of an itinerant worker. He might work. He might get a call. He might not. And the purpose for having the babysitter was so he could leave when he needed to. Now, the question is not whether or not this 13-year-old trusted or didn't trust the defendant. The question is, was he in a position that she should have been able to? And the answer to that question is yes, she should have been. Isn't the theory behind the trust and authority requirement that she would feel that because of his position, she would have to acquiesce in what it was that he was proposing or doing? Certainly. And her testimony was that she did not feel that she would have to acquiesce. Is that not correct? She stated that on cross-examination, but she also stated that if she needed to go someplace or the children were going someplace, she had to ask him for permission and for transportation to go there. She also testified on direct that she felt she had to do what he asked of her when he asked her to perform these sex acts, which occurred in the house. And they would take this little girl on trips with them. She stayed in a hotel with them when their house got flooded out. So when she says she doesn't think she had to obey what he said, I don't know why she said that, but that's not accurate. She did have to obey what he said as far as these children were concerned. And he was as much an employer of her as the children's mother was. And was that the mother's testimony? She testified that she is the one that hired her, that she would pay her, and kind of, you know, would ignore the fact that her husband was either there or not there because of the fact that he would leave to go to work and come back again. But he is more than just an adult in the room with a 13-year-old girl. Their relationship is more than that. And this, as an element of the offense, was up to the trial judge to decide whether the state had proven beyond a reasonable doubt that these factors existed, and he did. The extended term sentence, it was within the trial judge's discretion to sentence this defendant to an extended term. The defendant was put on notice that the state would be seeking an extended term sentence, and the defendant's argument is that this offense in Iowa is not substantially similar to or more serious than the criminal sexual assault of which he was convicted. And the people begged to differ. In Iowa, the defendant's conviction was for sexual abuse in the second degree. And sexual abuse is defined as any sex act between persons is sexual abuse by either of the persons when the act is performed with another person in any of the following circumstances. Such other person is a child. This defendant was charged with and convicted of an act with a child under the age of 12. The definition of sex act in Iowa is any sexual contact between two or more persons, penetration of the penis into the vagina or anus, contact between the mouth and genitalia, or contact between the genitalia of one person and the genitalia or anus of another, contact between the finger or hand of one person and the genitalia or anus of another. One of those sex acts had to take place for him to be convicted of sexual abuse in the second degree in Iowa. That is substantially similar to the offense he committed here, or it is more serious, depending upon what sex act took place. There is no way around the fact that this offense is at least substantial. It is substantially similar, if not more serious, than the offense of which he was convicted here in Illinois. The trial judge properly imposed an extended term sentence in this case. He certainly didn't abuse his discretion in doing so. And I'd like to take a minute to respond to the argument that the trial judge considered an improper factor when he considered the psychological harm to the victim. In this case, that's not an improper factor. That is considered a proper factor when you're determining whether or not the defendant's conduct caused harm and psychological harm may be considered under those circumstances. And there was evidence submitted in the pre-sentence report in the victim's statement. She sought counseling after this emotional trauma caused by his acts, and the other victim in the CF-64 case did not. I think that was a matter of the trial judge's discretion, and I don't think he abused it in imposing a sentence in this case. This factor certainly was not improper. Thank you, Ms. Fletcher. Ms. Fletcher. So the state's position in terms of the reasonable doubt argument that the defendant was in a position of authority is really based on the idea or on the fact that he was an adult. And as Justice McDade pointed out, this is supposed to go, that provision is supposed to go beyond generic societal roles. The state mentioned that Mr. Jasper could have told CW to leave the house. He could have taken her home. That absolutely is not true in this case. That's affirmatively rebutted by the record. The defendant's wife testified that he didn't have the power or the authority to send her or any other babysitter home. You know, Ms. Duffy mentioned that CW did, she did have to obey, even though the victim testified that she didn't. She didn't feel like he was supervising her. She didn't feel like he had to obey her, or she had to obey him. And CW also testified that she was required to get all of her instructions from the defendant's wife. So the state's assertion that he could have done these things is just, again, affirmatively rebutted by the record. Again, there's no question that his authority was apparently empowered, was limited to some extent by the mother's instructions. But let's suppose the kid's racking up and she starts slapping the snot out of him. Do you think he could say, stop that? Yes. So that would be some supervision, wouldn't it? I don't like the way you're disciplining my stepchildren. Stop it. Do you think he had the power to do that? But again, I think that speaks to, again, more of a generic societal role. If any adult saw somebody hitting a younger child, I think that they would step in and say something. But the difference in this case is we've got this adult, and I understand your argument about any adult, but in this case, this adult is in his house with his stepchildren. So that separates him from all the adults walking down the street that she might come in contact with or them all. But again, she testified that when they were both there at the same time, she didn't feel like he was supervising her, that he really had any say in what she was doing. He was just kind of there. In fact, I believe she testified that he spent most of his time out in the garage. And so there wasn't that sort of relationship between them, a relationship of trust, authority, or supervision. Now, in regards to the state's response to our enhancement argument, again, the state is arguing something separate. So the state is arguing that they're arguing the wrong standards. So Ms. Duffy mentioned that this offense was substantially similar to the offense of criminal sexual assault. That's not the standard. It's substantially equivalent to or more serious than. And Ms. Duffy said in her argument, looking at the Iowa statute, depending on the sex act that took place, this could be considered substantially equivalent to or more serious. But depending on the sex act that took place is the key part. Because we don't know. And on the bare face of the Iowa statute, it's not equivalent to the statute in Illinois. It covers a broader course of conduct. And that is the heart of our argument on this point. What has to be equivalent? The statute under which he was convicted or the conduct for which he was convicted? The conduct for which he was convicted. So if you could tell on the bare face of the statute that it, so if Iowa's second degree criminal sexual abuse statute was identical to Illinois' criminal sexual assault statute, then yes, you could tell, without getting into the underlying facts, that this was a substantially equivalent offense. And is substantial equivalent equal identical? No, not necessarily. But in Illinois, an offense that's substantially equivalent to criminal sexual assault involves some act of penetration. And the Iowa statute prohibits mere touching regardless of the intrusion. And that's the difference here. So even though the Iowa statute makes provision for penetration, you're saying that there isn't evidence that that was the basis on which he was convicted. Correct. There weren't any facts presented as to the underlying conduct, which was necessary in this case because the Iowa statute covers a broader course of conduct. And that's what Donahoe says?  Thank you, Your Honor. Thank you very much, Mr. President. And thank both of you for your argument today. We will take this matter into pliability. The defection was a written decision in the very first day. And we'll now take it shortly as such for evaluation.